| 112 | 63 |
| s70NW | 408 |
| 180 | 657 |

## BLAKESLEE *v.* CONSOLIDATED STREET RAILWAY CO.

1. STREET RAILWAYS—COLLISION WITH LOADED WAGON—NEGLI-GENCE.

   Whether the motorman of an electric car was guilty of negligence in attempting, at an increased speed, to pass a wagon loaded with barrels moving in the same direction a few feet ahead, is a question for the jury, where there is evidence that the wagon was driven within the line of the car when it was from 30 to 50 feet distant, and that the motorman at the time had his car under complete control.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

   A driver who occupies such a position in front of a load as to render it difficult for him to see an electric car approaching from the rear, and who, for the purpose of avoiding an obstruction, drives so near to the track that a collision and runaway result, is not, as a matter of law, guilty of contributory negligence precluding a recovery for his injuries, where it appears that the car was from 30 to 50 feet distant when he turned in towards the track, and that the motorman increased the speed of the car as he approached the load.

Error to Kent; Adsit, J.    Submitted January 14, 1897. Decided March 10, 1897.

Case by Charles B. Blakeslee against the Consolidated Street Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error.    Affirmed.

*Kingsley & Kleinhans*, for appellant.

*Earle & Hyde*, for appellee.

Long, C. J.   This case was in this court at the April term of 1895, was reversed, and remanded for another trial.   The opinion filed is found in 105 Mich. 462.   Judgment was reversed upon the ground that the trial court did not properly instruct the jury upon the question of the plaintiff's contributory negligence.   Speaking of that charge, it was said in the majority opinion:

"This naturally tended to give the jury to understand that turning suddenly upon the track in front of an approaching car, so close that a collision would necessarily ensue unless the motorman, by extremely prompt and vigorous action, should prevent, would not be contributory negligence, unless the plaintiff knew that the car was only a few feet away, or unless he could have reasonably ascertained the fact from his seat in front of the barrels.   In other words, the charge seems to imply that a man may place himself in any position that his convenience or the exigencies of his calling may require, and drive upon the track, without taking correspondingly greater precautions than would be necessary if in an open wagon; relying upon the proposition that he has the same right there that the car has, and that the motorman is required to avoid the collision.   The evidence shows that the plaintiff made no effort whatever to ascertain whether a car was coming or not.   In the case of a covered milk wagon this was held to be negligent, and the rule should be the same in this case.   Whether or not this negligence contributed to the injury is another question, which we cannot determine, it being for the jury."

Upon the second trial the case was submitted to the jury upon the theory stated in the opinion of this court.

It is contended by counsel for defendant that in the former record there was evidence that the car was run at a high rate of speed, and that the plaintiff was upon the track when the car was 100 feet away, but that in the present record it appears that the car was not moving at an unlawful rate of speed, but was going at a slower

rate than the ordinance authorized; and, again, that there was no evidence given on the trial that the car was over 30 to 50 feet away when the plaintiff turned upon the track. It is conceded that the present record does not show that the car was being driven to exceed six miles an hour. This was the testimony given by the motorman, Johnson. But it is contended that that fact would tend more strongly to show that the plaintiff was not guilty of contributory negligence; for one might be negligent in driving upon the track when the car was approaching at the rate of 15 miles an hour, if the car was in close proximity, while, if the car was running at the rate of only six miles an hour, he might not be guilty of negligence in driving upon the track. We think there is great force in this contention. From the plaintiff's testimony, it appears that he had traveled after turning upon the track, or at least within the line of the car on the track, something like 35 feet before he was struck. There was testimony on the present trial, given by Mr. Groskopf, that he saw the wagon turn towards the track, to go around Carbert's buggy, and that at that time the car was from 30 to 50 feet north of the rear end of the wagon. It is apparent that this brought the wagon within the line of the car, and, if the defendant's contention is correct, that the car was running at the rate of only six miles an hour, it would appear from the testimony of Mr. Johnson, the motorman, that it could have been controlled and stopped before it reached the plaintiff's wagon. At least, these are questions which were proper to submit for the consideration of the jury. Mr. Johnson testified that he came down Bridge street, and turned up Canal street; that, when he came across the tracks onto Canal street, the wagon with the load of barrels was just about a wagon length ahead of him; that when he got across the track, and onto the west side of Canal street, the wagon was just two wagon lengths ahead of the car. He was then asked to state what took

place from that time on, and testified: "Well, sir; we ran along side by side there— Well, the wagon was about a wagon length ahead of me, as I say, and we slowly gained on the wagon until we were side by side; pretty nearly side by side; and I thought I had room enough to go by the gentleman." He testified further: "The team gradually pulled in towards the car, and the barrels rubbed against the windows, and that frightened the team." He testified further that after he got across the street, and onto the west track in Canal street, he increased the speed of his car, and that at the time the wagon was struck he was running at the rate of six miles an hour.

The theory of the plaintiff on the first trial was that he was compelled to drive around Carbert's buggy, and in doing so was obliged to pass within the line of the car on defendant's track; and that, when he first so drove within the line, defendant's car was approaching, and was then 100 feet or more in his rear; and that, if the defendant had not been guilty of negligence, no injury would have resulted from the situation; but that defendant's car was driven at an unlawful rate of speed, and overtook plaintiff's wagon, and passed along by the side of it without an attempt being made to stop or retard it, and that on account of this negligence on the part of the defendant the plaintiff was injured; and it is insisted that this was precisely the theory of plaintiff on the second trial; that it was a question for the jury to say whether it was proper for defendant's car to approach this wagon, under the circumstances, and pass partially by it, at the rate of six miles an hour, and whether that was not a high rate of speed considering the position of the wagon on the track, and whether such conduct was not careless and negligent. Counsel for defendant contend that the case is controlled by *Graff* v. *Railway Co.*, 109 Mich. 77; *Guilloz* v. *Railway Co.*, 108 Mich. 41. We think the present case plainly distinguishable from those, and that the court very properly submitted, not

only the question of defendant's negligence, but the plaintiff's contributory negligence, for the consideration of the jury.

It is further contended by defendant's counsel that the court erred in instructing the jury that it was the duty of the motorman in running the car to be cautious, diligent, etc., not to run it at a dangerous rate of speed, and to check or stop it when apparently necessary to avoid obstructions or collisions; and, if he observed an obstruction on the track ahead of his car, he had no right to recklessly run into such obstruction, and, if he did so, that that would be negligence on his part. The contention is that there was no evidence that the motorman was guilty of any negligence, or that he ran the car at a dangerous rate of speed, or that he recklessly ran into the wagon. We need but refer to the testimony of the motorman to answer these propositions. If his testimony is true, he had full control of his car when within a wagon length of the plaintiff's wagon, but increased his speed so that he could pass. This testimony, taken in connection with that of Groskopf that the wagon turned in towards the track while the car was from 30 to 50 feet distant, shows that the motorman was reckless under the circumstances. We think there was no error in this part of the charge.

We have examined the other questions raised by defendant's counsel, and think they must be overruled. The trial was fairly conducted, and the court charged the jury fully upon the legal questions involved; and, both questions being for the jury to determine, we find no error in the record.

The judgment is affirmed.

The other Justices concurred.