[No. 136.   First Appellate District.—September 29, 1905.]

ELIZA RUPPEL, Administratrix, etc., Respondent, v. UNITED RAILROADS OF SAN FRANCISCO, Appellant.

NEGLIGENCE—ACTION FOR DEATH—ORDER GRANTING NEW TRIAL—SUP-
    PORT OF VERDICT—DISCRETION—CONFLICTING EVIDENCE.—In an
    action by an administrator for the death of his intestate owing

to the alleged negligence of the defendant, where the verdict was for the defendant, upon plaintiff's motion for a new trial for insufficiency of the evidence to support the verdict, it is the duty of the trial judge to exercise his judgment and discretion in reviewing the evidence, and though it is conflicting, to grant a new trial if he does not believe that the verdict is the correct conclusion from all the evidence. This court will not interfere with the order granting a new trial where no abuse of discretion appears.

ID.—DAMAGES RECOVERABLE.—Where the evidence tends to show that the death resulted from the actionable negligence of the defendant, though the recovery is limited to the value of the pecuniary interest of those entitled to recover damages therefor, yet such value is not a precise sum, but such damages are allowable as, "under all the circumstances, may be just." It cannot be said as matter of law that a wife and minor children are entitled only to nominal damages for the wrongful death of the husband and father caused by defendant's negligence, notwithstanding the absence of proof of important circumstances to be considered by the jury in estimating the pecuniary damages to which the wife as administratrix of her deceased husband would be entitled.

APPEAL from an order of the Superior Court of the City and County of San Francisco.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Morrison & Cope, for Appellant.

Stafford & Stafford, for Respondent.

COOPER, J.—This is an action by the plaintiff, as administratrix of the estate of Conrad Ruppel, deceased, to recover damages, alleged to have been sustained by the heirs of the deceased, by reason of his death, resulting from the alleged negligence of the defendant corporation in the operation of its cars on the public streets of the city of San Francisco.

The jury returned a verdict for defendant. On motion of plaintiff the court below granted a new trial, on the ground that the evidence does not support the verdict, but shows negligence on the part of the defendant.

This appeal is by defendant from the order.

The judge of the trial court saw the witnesses and heard the evidence while looking at them, and for this reason is much better qualified to judge of their credibility and the value of the evidence than we are.   It is the duty of the trial

judge, on a motion for a new trial, to exercise his judgment and discretion in reviewing the evidence, and, even though it is conflicting, to grant a new trial if he does not believe the verdict is the correct conclusion from all the evidence. The power of the trial court to so review the evidence is a salutary one, and often prevents great injustice from being done by an erroneous verdict. It is only in cases of abuse of discretion that this court will interfere. We have carefully examined the evidence and find no such abuse of discretion.

The evidence tends to show that early in the morning of April 5, 1902, the deceased, in a light wagon, was driving a single horse along and down Mission Street in the city of San Francisco at a place where there was a slight incline in the grade. A street-car belonging to defendant, on which there were passengers, a motorman, and conductor, going in the same direction, ran up from behind, and struck the hub of the left hind wheel of deceased's wagon, precipitating him to the ground in a violent manner and killing him almost instantly. The car and wagon were in full sight of each other for several hundred feet prior to the collision, and the wagon was in full sight of the motorman. It is not clear from the evidence whether any portion of the wagon was on the defendant's track at the time of the collision or not, but it is not material, as it is clear beyond question that the left hind wheel of the wagon was, if not on the track, near enough to it that the car, instead of passing, struck it, thus causing the death. There is evidence that the car was going pretty fast, and one witness testified that in his opinion it was going at the rate of about ten miles an hour. All the evidence shows that the motorman did not ring the bell until in close proximity to the wagon, some of the witnesses placing it at ten feet.

The motorman testified that he rang the bell when within about a car's length (twenty-six feet) of the wagon; that it would be a good stop to stop the car in half its length (thirteen feet); that when he saw he could not pass the deceased he was a car's length distant. He not only did not stop the car, but it ran eight feet beyond the point where it struck the wagon, making thirty-four feet after the motorman saw he could not pass the wagon. The motorman testified that as he approached the wagon at some distance it was not on the track, but as he arrived in dangerous proximity to it, it

"swerved" in toward the track, making it impossible for him to stop the car in time to avoid the collision. It is not our province on this appeal to determine the question as to the truth of this evidence. The court below, in granting the new trial, had the right to reject it. The evidence tending to show that the defendant's car approached deceased at a rapid rate of speed and ran into his wagon, which was in plain view for several hundred feet, and this without ringing a bell until too late to give warning, required careful consideration at the hands of the trial judge.

Appellant contends that there was no evidence as to damages, and invokes the rule that the court should not grant a new trial in a case where the plaintiff would only be entitled to nominal damages.

The evidence show that the deceased left surviving him a widow (plaintiff) and four children, the youngest child being a minor twelve years of age.

At common law all right of action for personal injury, whether it be the cause of death or not, is extinguished by the death of the injured party. (4 Sutherland on Damages, 3d ed., sec. 1259, and cases cited.) In most, if not all, the states the statutes or codes provide for recovery of damages by the heirs against the party who causes the death of another by negligence.

Our statute provides (Code Civ. Proc., sec. 377) : "When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."

The theory of the above section, and of similar statutes, is that those who are so entitled to recover damages have a pecuniary interest in the life of the person killed, and hence the amount of recovery is limited to the value of that interest.

But *pecuniary interest* does not mean a precise sum in money measured and demonstrated by evidence. The language of our statutes does not so limit it, because it allows such damages as under "all the circumstances of the case may.

be just." It is said in Sutherland on Damages (3d ed., vol. 4, sec. 1263), quoting from *Tilley* v. *Hudson River R. R. Co.*, 29 N. Y. 257, 286, 387, [86 Am. Dec. 297] : "A liberal scope was designedly left for the action of the jury; they are to give such damages as they shall deem a fair and just compensation with reference ·to the pecuniary injury resulting· from such death; they are not tied down to any precise rule. Within the limit of the statute as to the amount, and the species of injury sustained, the matter is to be submitted to their sound judgment and discretion. They must be satisfied that pecuniary injury resulted. If so satisfied they are at liberty to allow them from whatever source they actually proceeded which could produce them. If they are satisfied from the history of the family, or the intrinsic probabilities of the case, that they were sustained by the loss of bodily care or intellectual culture, or moral training, which the mother had before supplied, they are at liberty to allow for it."

In *Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 37, an instruction given by the lower court that the jury might take into consideration the pecuniary loss "suffered by this plaintiff in the death of said George Beeson by being deprived of his support; also the relations proved as existing between plaintiff and deceased at the time of his death, and the injury, if any, sustained by her in the loss of his society," was approved, and the court in commenting on Code of Civil Procedure, section 377, applied to the instruction, said: "We think that the social and domestic relations of the parties, their kindly demeanor toward each other, the society, were parts of 'all the circumstances of the case' for the jury to take into consideration in estimating what ·damages would be just, from a pecuniary point of view, especially as there is nothing in the case to show that the jury might give damages by the way of solace."

The Beeson case has since been cited and approved. (*Morgan* v. *Southern Pacific Co.*, 95 Cal. 517, [29 Am. St. Rep. 143, 30 Pac. 603] ; *Keast* v. *Santa Ysabel Mining Co.*, 136 Cal. 260, [68 Pac. 771].) The late case of *Storrs* v. *Los Angeles Traction Co.*, 134 Cal. 91, [66 Pac. 72], is directly in point. The court there said: "The objection of the appellant that, as there was no specific testimony that the plaintiff was earning anything at the time of the injury, or of the amount

that he was capable of earning, any verdict of the jury under this instruction would be merely conjecture, is untenable. . . . If the circumstances which were before the jury show that by reason of the injury he has become unable to perform the labor, or transact the business, which he was accustomed to transact or perform prior thereto, he is entitled to recover damages therefor, and from the nature of the investigation the amount of such recovery must be left to the wise discretion of the jury.''

While we think that if the plaintiff had proven that deceased was a man in sound bodily health, and in receipt of monthly wages, or salary, these matters would have been very important circumstances to be considered by the jury in estimating the pecuniary damages to which plaintiff would be entitled, yet, we do not deem the absence of such proof conclusive of the fact that plaintiff is only entitled to nominal damages. We cannot say, as matter of law, that plaintiff can only recover nominal damages for the death of her husband if caused by defendant's negligence while he was driving a horse upon the public highway.

Not only this, but the point seems not to have been raised in the trial court.

The case of *Burk* v. *Arcata etc. R. R. Co.*, 125 Cal. 364, [73 Am. St. Rep. 52, 57 Pac. 1065], is not in conflict with, but supports, the views herein expressed.

That action was brought by adult collateral heirs. The court said: ''The statutes upon this subject seem to be framed upon the idea that the heirs would always constitute the family of deceased. In some states the beneficiaries of this statute are so limited. We can easily understand that a life may be of great pecuniary value to such persons. Collateral heirs, at all events, must prove probable loss, or their recovery will be limited to nominal damages.''

The order is affirmed.

Hall, J., and Harrison, P. J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on November 24, 1905.